564 P.2d 922

**CITY OF SCOTTSDALE, a Municipal Corporation, Appellant,**

v.

**ARIZONA SIGN ASSOCIATION, INC., an Arizona Corporation, Appellee.**

No. 1 CA–CIV 2994.

Court of Appeals of Arizona,
Division 1,
Department B.

March 10, 1977.

Rehearing Denied April 22, 1977.

Review Denied May 24, 1977.

Richard Filler, Scottsdale City Atty. by John T. Zastrow, Scottsdale, for appellant.

Snell & Wilmer by Guy G. Gelbron, Phoenix, for appellee.

SCHROEDER, Presiding Judge.

This is a challenge to the constitutionality of portions of the City of Scottsdale's zoning ordinance requiring that the plans of all structures and site work in the City be submitted first for approval by the Development Review Board. The case was instituted in a declaratory judgment action by the Arizona Sign Association on behalf of its members who are in the business of designing and erecting signs in the Scottsdale area.

The development review ordinance itself is quite comprehensive, and establishes the Review Board, the qualifications for membership on it, the procedure for submission and review, appeal procedures to the city council, as well as a series of criteria to be used by the Board in considering applications. The trial court, on summary judgment, struck down three of the eight criteria, holding that they were unconstitutionally vague and an undue delegation of power. Those criteria were:

"C. The proposed development shall promote a desirable relationship of structures to one another, to open spaces and topography both on the site and in the surrounding neighborhood.

"F. The architectural character of the proposed structure shall be in harmony with, and compatible to, those structures in the neighboring environment, and the architectural character adopted for any given area, avoiding excessive variety or monotonous repetition.

"H. The architectural character of a development shall take cognizance of the unique climatological and other environmental factors of this region and promote an indigenous architectural feeling." (Scottsdale, Ariz. Zoning Ordinance No. 455 § 1.403 (1973)).

The principal questions raised by the City in this appeal relate to the scope of issues properly before us for decision.

■ We dispose initially of appellant's contention that the appellee, as a trade association, could not bring any action challenging the ordinance because it directly affects members of the association, and not the association itself. This contention was raised and answered in *Arizona Fence Contractors Association v. City of Phoenix Advisory & Appeals Board*, 7 Ariz.App. 129, 436 P.2d 641 (1968), holding that a trade association may challenge the validity of an ordinance directly affecting the association's members. The trial court did not lack jurisdiction in this matter solely because it was brought by a trade association.

More difficult questions are posed, however, by the absence in this case of any specific instance in which a particular permit has been sought and denied by the Review Board. Thus the City contends that there is no justiciable controversy here because there has been no harm or threatened harm demonstrated.

■ The appellee correctly points out that members by virtue of the very enactment of the ordinance are subjected to the requirement of submitting plans pursuant to this ordinance, and that their interests have been demonstrably affected to that degree. We agree that to the extent that this declaratory judgment action can be viewed as a challenge to the authority of the City of Scottsdale to require appellee's members to submit plans for review, the action is maintainable. That was in essence the scope of the issues raised and determined in *Arizona Fence Contractors Ass'n v. City of Phoenix, supra.*

■ However, although the City's authority to enact this type of ordinance was raised below, it is not in fact an issue in this appeal. Both parties appear to recognize the general weight of recent precedent upholding the overall authority of communities to regulate matters of aesthetics and design through the zoning power and to create boards of architectural review. Such authorities are particularly strong where, as here, the ordinance is expressly tied to the interests of the city in maintaining the economic and general well-being of the community. *See State ex rel. Stoyanoff v.*

*Berkeley*, 458 S.W.2d 305 (Mo.1970); *State ex rel. Saveland Park Holding Corp. v. Wieland*, 269 Wis. 262, 69 N.W.2d 217 (1955); *Reid v. Architectural Board of Review*, 119 Ohio App. 67, 192 N.E.2d 74 (1963); Anderson, *American Law of Zoning* § 8.58; Rathkopf, *The Law of Zoning and Planning* § 14.01. Indeed, appellee itself in its brief states that the issue in this appeal is "not whether the City of Scottsdale can regulate the design and construction of signs within its boundaries but rather whether the provisions of [this ordinance] set forth adequate standards under the relevant constitutional tests." The issue determined by the trial court and present in this appeal, therefore, involves only the sufficiency of certain criteria contained in the ordinance.

■ We are not satisfied that as to this issue, there is an actual case or controversy. There is no showing that as a result of those particular standards which the trial court found to be too vague, any member of the appellee organization has been denied a permit or has been threatened with denial· of a permit. The briefs have called to our attention many cases in which courts have considered specific standards of design review. Some cases, involving standards with terminology similar in some respects to the terminology used in this ordinance, have been upheld. *Stoyanoff, supra; Saveland Park, supra; Reid, supra.* A few cases have determined that the standards were too broad a delegation of power, or were inappropriately applied. *Pacesetter Homes, Inc. v. Village of Olympia Fields*, 104 Ill. App.2d 218, 244 N.E.2d 369 (1968); *Hankins v. Borough of Rockleigh*, 55 N.J.Super. 132, 150 A.2d 63 (1959).

In this case, we have no way of knowing whether the three standards struck down below have or will in the future result in the denial of any permits. Moreover, as this case was decided on the basis of summary judgment with no testimony from any applicants or officials involved in the administration of the ordinance, there is no way of knowing how the Scottsdale Review Board will interpret these standards. In oral argument, the appellee emphasized its view that application of the standards could lead to arbitrary and unreasonable results, but its arguments on this score are speculative and without support in this record.

Ours is the same problem faced by the Court of Appeals of New York in *Old Farm Road, Inc. v. Town of New Castle*, 26 N.Y.2d 462, 311 N.Y.S.2d 500, 259 N.E.2d 920 (1970), which also involved a declaratory judgment action challenging the provisions of an architectural review ordinance as overly broad and vague. The court, in upholding a dismissal of the action, felt that the issues were not ripe for decision when no building permit for a specific structure had been denied as a result of the standards. The court reasoned that without such denial the existence of present damage could not be demonstrated. We agree with· the court's further observation that "in this particularly difficult area of regulation, a decision rendered prior to the denial of a building permit would have to be reached in a vacuum and without such help as we might obtain from knowledge of the board's practical construction of the ordinance and of the standards actually applied."

We therefore hold that the case presents no justiciable controversy with respect to the interpretation or application of the standards in the ordinance, and the judgment of the trial court as to those standards must be reversed.

WREN and EUBANK, JJ., concur.