Dodge Mill Land Corp. et al., Respondents, v Town of Amherst et al., Appellants.

Fourth Department, February 17, 1978

APPEARANCES OF COUNSEL

*John P. Lane* for appellants.

*Lipsitz, Green, Fahringer, Roll, Schuller & James (Evan E. James* and *Frank S. Kedzielawa* of counsel), for respondents.

### OPINION OF THE COURT

WITMER, J.

Defendant, Town of Amherst, appeals from a judgment of the Supreme Court, Special Term, Erie County, granting plaintiffs' motion for summary judgment and declaring defendants' rezoning of plaintiffs' subject property from B-3 (general business, including most commerical purposes) to R-3 (single residences or common recreational uses in connection therewith) unconstitutional as applied thereto because it is unsuited for such use. We reverse and grant defendants' cross motion for summary judgment dismissing the complaint.

In 1974 Dodge Mill Land Corporation, one of the plaintiffs, owned a triangular shape parcel of land containing several acres in defendant town, bounded on the east by Miller Road, on the south by Dodge Road and on the northwest by Millersport Highway. Miller Road runs north from Dodge Road to French Road. The corporation's property was bisected by a 100-foot wide easement for a high voltage electric transmission line of the Niagara Mohawk Power Corporation, which easement also runs north and south and lies about 212 feet west of Miller Road and parallel thereto throughout the length of Miller Road. At that time, and since 1961, the corporation's property was zoned for agricultural use, except for two thirds of an acre at the northerly pinnacle thereof at the intersection of Millersport Highway and Miller Road, which was zoned for B-3 uses (general business); and this small parcel is the subject property. It is triangular, having a frontage on Millersport Highway of 344 feet, on Miller Road

of 271 feet, and its southern or base, line is 212 feet long, extending from Miller Road westerly to the power-line easement. It contains 28,726 square feet of land.

From the early 1970's defendant town had been making extensive studies of the town for the purpose of adopting a comprehensive rezoning map. It adopted a master plan in February, 1975, and after a public hearing to consider adoption of a rezoning ordinance, it adopted such ordinance in January, 1976.

In August, 1975 plaintiff corporation conveyed the subject two thirds of an acre, it being vacant land, to the individual plaintiffs who, incidentally, were also the stockholder-owners of the plaintiff corporation.

The new ordinance established an R-3 zone (single residences or common recreational uses in connection therewith), bounded on the west by the power-line easement. The property next west of the subject property, and west of Millersport Highway, was zoned for a shopping center, and the property south thereof was zoned for general business use, as was plaintiffs' remaining property west of the power-line easement. The property west of the subject property is not only zoned for a shopping center but it is owned by a corporation which already operates a shopping center at Amherst and one at Wheatfield. Millersport Highway runs from southwest to northeast and intersects Miller Road about halfway between Dodge Road and French Road. It has a daily traffic count of 8,650 vehicles, and there are plans for enlarging it to a four-lane highway. Running southeasterly through the northeast portion of the subject property and continuing southerly along its boarder with Miller Road, is a 10-foot wide town drainage ditch. The land directly north of the subject property, across Millersport Highway, is vacant, but in the southeast segment of the intersection of Millersport Highway and Miller Road, and directly northeast of the subject property, is the "Romance Bar", a tavern, which constitutes a nonconforming use under the new ordinance. Directly south of it and across Miller Road to the east of the subject property is open land presently used for the storage of heavy construction equipment and materials, also a nonconforming use.

By virtue of the new zoning ordinance, as above described with respect to this specific area, the lands west of the subject property are usable for business purposes, and by virtue of the nonconforming uses, the two properties northeast and east of

the subject property are also usable for such purposes. Only the property directly north and the properties south and southeast of the subject property are presently limited to residential use, along with the subject property. At Special Term plaintiffs successfully contended that such rezoning is unconstitutional as applied to the subject property.

■ The record shows that defendants' officials spent years developing a plan for rezoning the town. They established the principle that "all parcels and land areas of insufficient size to permit viable retail clusters should be rezoned to the adjacent zoning category. Commercially zoned properties in areas not yet developed to the measurable economic support density necessary to make a neighborhood center viable should also be rezoned". Pursuant to such plans and principles, after public hearing defendants enacted the assailed rezoning ordinance, establishing districts for various uses. It is not questioned that the ordinance was based upon a comprehensive plan (see *Albright v Town of Manlius,* 34 AD2d 419, affd in this respect 28 NY2d 108). An ordinance so enacted is entitled to the strongest possible presumption of validity (*McGowan v Cohalan,* 41 NY2d 434, 436; *Albright v Town of Manlius, supra,* p 422). It is not for the courts to substitute their judgment for that of local officials invested by statute with the authority and duty to prepare and enact zoning ordinances.

■ ■ By the very nature of zoning, the laying out of districts for different uses requires a certain amount of arbitrary drawing of district lines. Such lines or divisions may be invidious to some owners abutting thereon. But unless the restrictions in a district deprive an owner of profitable use of his property, he has no redress, even though the restrictions reduce the value of the property (*McGowan v Cohalan, supra; Salamar Bldrs. Corp. v Tuttle,* 29 NY2d 221; *Chase Manhattan Bank v Incorporated Vil. of Flower Hill,* 28 NY2d 694). Furthermore, in establishing a use district, very often there will be properties in the district which do not conform to the permitted uses. That situation neither prevents the municipality from creating the district nor the owners from continuing their occupation thereof as nonconforming uses, the latter, at least, until the municipality takes steps to phase them out (see *Matter of Harbison v City of Buffalo,* 4 NY2d 553).

■ In establishing the R-3 district in question, defendant used the power-line easement property as the west line thereof, presumably because that left enough depth of land

west of Miller Road for the laying out of residential lots between it and Miller Road, both north and south of subject property. Although plaintiffs have shown that this redistricting will result in a reduction of the value of their property, as above noted such proof does not entitle them to have the zoning declared void. Only evidence that the property cannot be profitably used, sold or leased under the zoning will entitle plaintiffs to have such zoning declared invalid as applied to their property (*McGowan v Cohalan, supra,* p 436; *Matter of Forrest v Evershed,* 7 NY2d 256, 262). Such proof generally entails a showing of the bona fide efforts made to use, sell or lease the property profitably under the new zoning (see *Dauernheim, Inc. v Town Bd. of Town of Hempstead,* 33 NY2d 468; *Wackerman v Town of Penfield,* 47 AD2d 988; *Matter of Moore v Nowakowski,* 44 AD2d 901, mod 46 AD2d 996; *Matter of Tantalo v Zoning Bd. of Appeals of Town of Seneca Falls,* 43 AD2d 793). The record in this case does not contain such evidence. If plaintiffs find that they cannot appropriately use this property under this ordinance, at a later date they may be able to present the necessary evidence to obtain relief.

■ ■ It is recognized, of course, that a rezoning of property from business to residential use may, in certain circumstances, constitute an unconstitutional or arbitrary exercise of the police power (*Matter of Grimpel Assoc. v Cohalan,* 41 NY2d 431; *Humble Oil & Refining Co. v Dekdebrun,* 38 AD2d 46), and in such situations an owner may proceed directly to have the ordinance declared invalid as to his property without exhausting his administrative remedies under the ordinance (*Matter of Grimpel Assoc. v Cohalan, supra*). The factual situation in this case, however, is far different from cases where such principles apply. Here, plaintiffs' property is at the boundary of a residential zone, with commercial zones adjoining on the west. The happenstance that two properties to the northeast and east of it enjoy nonconforming uses cannot serve to render the zoning invalid (see *Heather Holding Corp. v Town of Southampton,* 59 AD2d 886).

Because of the fact that the subject property is located next to a power-line easement and at a busy intersection, it may not be ruled out that in the course of time and further proof, plaintiffs could succeed in an action to declare the ordinance invalid as to this property (see *Matter of Grimpel Assoc. v Cohalan, supra*). Moreover, because of the existence of the two nonconforming uses adjacent to the subject property, plaintiffs

might well be able to make a sufficent showing to support an application for a variance. Defendant might grant a variance upon condition that it terminate within a reasonable time after one or both of the nearby nonconforming uses cease. As noted, however, plaintiffs have not established a case for the invalidity of the ordinance nor have they proceeded for relief under it.

The judgment should, therefore, be reversed and plaintiffs' motion denied; defendants' cross motion for summary judgment should be granted and the complaint dismissed; all without prejudice to such further proceedings for relief which plaintiffs may seek.

MARSH, P. J., MOULE, CARDAMONE and DENMAN, JJ., concur.

Judgment unanimously reversed, without costs, plaintiffs' motion for summary judgment denied, defendants' motion for summary judgment granted and complaint dismissed.